AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Northern District of New York

| | |
|---|---|
| United States of America<br>v.<br>Gamal El Rimawi, d/o/b xx/xx/1974<br><br>Defendant(s) | Case No.<br>1: 18-MJ-85  (CFH) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  Jan. 1, 2015 - Feb. 17, 2018  in the county of  Saratoga  in the
  Northern  District of  New York , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1343 & 1349 | Count 1: Conspiracy to Commit Wire Fraud |
| 18 U.S.C. 1956(h) | Count 2: Conspiracy to Launder Monetary Instruments |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

HSI Special Agent Timothy Irving
Printed name and title

Sworn to before me and signed in my presence.

Date: February 17, 2018

_____
Judge's signature

City and state:   Albany, New York          Hon. Christian F. Hummel, U.S. Magistrate Judge
Printed name and title

## **AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Timothy Irving, a Special Agent with Homeland Security Investigations, being duly sworn, depose and state as follows:

## **INTRODUCTION**

1. This affidavit is made in support of a criminal complaint (and corresponding arrest warrant) charging GAMAL EL RIMAWI with one count of a violation of Title 18, United States Code, Sections 1343 & 1349 (Conspiracy to Commit Wire Fraud) and one count of a violation of Title 18 United States Code, Section 1956(h) (Conspiracy to Launder Monetary Instruments).

2. I am a Special Agent with Homeland Security Investigations (HSI) and have been since April 2007. I am assigned to the Albany, New York Office. During my career I have investigated a variety of federal violations pertaining to narcotics trafficking, fraud, and money laundering. In my current assignment, I primarily investigate violations of Customs and Immigration laws. I have experience regarding these federal violations through my daily investigative responsibilities and extensive training. I am an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). As a HSI Special Agent, I am authorized to seek and execute federal arrest and search warrants for Title 18 and Title 31 criminal offenses, including violations of 18 U.S.C. §§ 1343 & 1349 (Conspiracy to Commit Wire Fraud) and 18 U.S.C. §§ 1956(h), 1957 (Conspiracy to Launder Monetary Instruments and Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity.

3. Since April 2007, I have conducted and participated in the investigation of a wide range of federal criminal violations, including mail fraud, wire fraud, bank fraud, money laundering, and computer crimes. I have also been involved in investigations specific to telemarketing fraud and mass marketing fraud.

4. The statements in this affidavit are based in part on information developed by your affiant and on my investigation of this matter and the investigation of other law enforcement officers, particularly United States Postal Inspection Service Postal Inspector Brendan Donahue and Homeland Security Investigations Special Agent Joseph Kochanskyj. I have set forth only those facts that I believe are necessary to establish probable cause to believe that GAMAL EL RIMAWI has committed a violation of Title 18, United States Code, Sections 1343 & 1349 (Conspiracy to Commit Wire Fraud) and Title 18, United States Section 1956(h) (Conspiracy to Launder Monetary Instruments).

## THE INVESTIGATION

### *SUMMARY OF THE INVESTIGATION*

6.) The schemes / conspiracy being investigated involve multiple individuals in both the United States and Canada. The purpose of the schemes is to defraud victims out of money, and then to launder the stolen monies. The schemes target persons over the age of 55 primarily in two fraud schemes, a relative in distress scheme and a lottery fraud, advance fee scheme.

With respect to the group of victims who have been victimized in a relative in distress scheme, the perpetrators contact the victim by telephone and inform the victim that a relative of the victim has encountered legal issues, and that legal fees need to be paid urgently in order to resolve the legal issues. Victims are usually then directed to send cash to pay those legal fees. Victims send cash in order to pay the purported legal fees, often in the thousands of dollars, via common courier, such as United Parcel Service ("UPS") to an address such as a hotel or Commercial Mail Receiving Agency ("CMRA")[1] in the Northern District of New York. The funds

---

[1] A Commercial Mail Receiving Agency ("CMRA") is a business which accepts mail on behalf of others and also often engages in the forwarding of mail.

are then picked up by a "money mule"[2] working for perpetrators and then smuggled into Canada where the funds are delivered to the perpetrators.

With respect to the group of victims who have been victimized in a lottery fraud, advance fee scheme, the perpetrators contact the victim via telephone or e-mail and inform the victim that he/she has won a lottery or sweepstakes contest, and that the victims needs to pay fees or taxes in order to secure those winnings. Victims are then directed to wire funds to various bank accounts in order to pay the purported fees or taxes. Often, the victims' payments are in the tens of thousands of dollars. However, there is no legitimate lottery or sweepstakes winnings to which the victims are entitled, and they are ultimately defrauded of their money.

Upon information and belief, GAMAL EL RIMAWI's primary (but not only) role in the schemes / conspiracies under investigation is to open and maintain bank account(s) in the United States and elsewhere which are used to receive monies stolen from victims in the above described lottery fraud, advance fee scheme, and then to either wire / transfer the stolen monies to other bank accounts belonging to various fraud members, or to withdraw the stolen monies in cash for subsequent dissemination to members of the conspiracy.

## *DETAILS OF THE INVESTIGATION*

7.)   In January 2016, the New York State Police Special Investigations Unit, HSI and the United States Postal Inspection Service ("USPIS") began investigating a relative in distress scheme in which victims over the age of 55 were contacted via telephone and informed that a relative was in legal trouble, and that funds needed to be paid urgently in order to resolve the relative's legal issues. Victims were then directed to remit funds (usually in cash) to various addresses in Upstate New York or Vermont via common courier, such as UPS. As a result of the investigation, investigators arrested four Canadian "money mules",[3] whose roles in the fraud

---

[2] A "money mule" is an individual employed by a criminal organization to transport proceeds on unlawful activity.
[3] The money mules arrested have the initials of C.A., S.F., N.A. and A.A.

organization were to physically pick up victim funds in the United States, smuggle the victim funds into Canada, and then bring the victim funds to the perpetrators. The four aforementioned "money mules" were arrested after picking up victim funds at separate locations in the Northern District of New York. On January 6, 2016, C.A. and S.F. were arrested by local authorities in the Northern District of New York, and on January 7, 2016, N.A. and A.A. were similarly arrested by local authorities in the Northern District of New York. The four aforementioned "money mules" later pleaded guilty to larceny-type offenses in Albany, New York, County Court for their roles in the fraud schemes under investigation. Through the investigation, investigators learned that the "money mules" frequently traveled with other passengers, including family members, in their cars in order to pick up the victim funds. It is believed that this was done in order to reduce the scrutiny that the "money mules" received from border security agents both in the United States and Canada.

8.) In order to identify other "money mules" and coconspirators involved in the fraud schemes and smuggling of victim funds, investigators conducted a review of border crossing records for C.A., S.F. N.A. and A.A. to identify who had crossed with them. A review of United States and Canadian border crossing records for C.A. showed that on July 11, 2015 she crossed into the United States from Canada through the Port of Champlain with Michail Michakis ("MICHAKIS"). MICHAKIS was later identified as C.A.'s stepson. Investigators then looked at MICHAKIS' border crossing records which showed several border crossings, both by land and air, from Canada into the United States with an individual by the name of Gamal El Rimawi ("RIMAWI").

9.) Investigators learned from HSI that RIMAWI, on December 14, 2015, while traveling from Canada into the United States through the Port of Champlain in Champlain, NY, was selected for inspection by Customs and Border Protection ("CBP") officers and subjected to a border search. RIMAWI also met with Special Agent ("SA") Rob Charles of Homeland Security

Investigations. At the time of RIMAWI's entry into the United States, he was in the company of Caterina Maniatoglu ("MANIATOGLU"). Additionally, at the time of RIMAWI's inspection, photocopies were made of various documents that were in either his personal possession or in his vehicle. These documents included: a Quebec Driver's License in the name of RIMAWI; copies of Bank of America "Funds Transfer Request Authorizations" (*i.e.* wire transfer requests for large amounts of money) in the name of PHANTOM FINE ARTS INVESTMENTS for account numbers ending in 1464 and 1477; and a business card identifying RIMAWI as an "Art Consultant." The "Funds Transfer Request Authorization" forms showed that they were completed in "SARATOGA," and both had the phone number 518-584-3301 which investigators later learned was associated with the Bank of America Financial Center at 27 Division St. in Saratoga Springs, NY (located within the Northern District of New York). Notably, officers also found a "customer copy" of a Bank of America cashier's check dated November 25, 2015, made payable to 6704786 CANADA INC, in the amount of $34,500.00. The check was issued from a Bank of America account in the name of PHANTOM FINE ARTS & INVESTMENTS and the check was issued at a Bank of America location in Saratoga Springs, New York which is located in Saratoga County in the Northern District of New York.

10.) Investigators subsequently reviewed Bank of America account records for a Bank of America account in the name of Phantom Fine Arts Investments LLC, account number ending in 1477. The sole account signatory is Michail MICHAKIS. Investigators reviewed the time period around the issuance of the November 25th 6704786 CANADA INC. cashier's check, and investigators identified the corresponding withdrawal. Investigators also noted that there was a preceding deposit made via wire into the account on November 23, 2015 in the amount of $38,862.43. The source of the wire was an Ulster Savings Bank account in the name of N.F.[4] Investigators also noted that the Bank of America account number ending in 1477 was credited

---

[4] N.F. was subsequently identified and determined to be a victim of the schemes under investigation.

with three large wires or account transfers totaling $418,000.00 between July 31, 2015 and August 18, 2015. The source of the incoming wires/transfers appeared to be a Bank of America account in the name of L.S.[5] The Bank of America account number ending in 1477 also had a number of large incoming wire transfers totaling $273,536.60 between February 2, 2016 and March 9, 2016. The source of the deposits were various bank accounts in the name of L.W.[6] A review of bank records showed that a majority of the wire transfers that L.W. wired into the account Bank of America account number ending in 1477 were promptly withdrawn from the account via international wire transfers and domestic wire transfers to a TD Bank account in the name GAMAL EL RIMAWI. The international wire transfers sent included an August 25, 2015 international wire transfer in the amount of $85,000.00 to a Canadian Imperial Bank of Commerce ("CIBC") account in the name of 6704786 Canada Inc. This wire occurred promptly after the transfer of funds by L.S. into the Bank of America Phantom Fine Arts Investments LLC account number ending in 1477. The total amount of funds transferred from the Bank of America Phantom Fine Arts Investments LLC account number ending in 1477 to the TD Bank account in the name of GAMAL EL RIMAWI, around the time of L.S.'s, NF's and L.W.'s wire transfers, July 31, 2015 to March 9, 2016, was $522,600.00 USD.

11.) Investigators subsequently reviewed TD Bank records for a TD Bank account in the name of GAMAL EL RIMAWI and ending in the number 1143. The TD Bank "Customer Account Setup" form for RIMAWI's account showed the account was opened on July 25, 2009 and he provided a Canadian Passport as identification for the opening of the account. The "Customer Account Setup" form listed the passport number as "WJ524275." On the "Customer Account Setup" form, RIMAWI's employer is listed as "Rimawi Art Gallery" and his occupation is listed as an "Art Consultant." RIMAWI's phone number is listed on the "Customer Account Setup" form as

---

[5] L.S. was subsequently identified and determined to be a victim of the schemes under investigation.
[6] L.W. was subsequently identified and determined to be a victim of the schemes under investigation.

(514) 803-6294. The review of the account records for the TD Bank account number ending in 1143 showed that N.F. (*see* paragraph 10) wired $34,971.46 into the account on November 10, 2015 from an Ulster Savings Bank account, and sent a second wire in the amount of $37,021.16 into the same account on November 16, 2015, again from an Ulster Savings Bank account. The TD Bank records also show that funds transferred from the Bank of America account number ending in 1477 were comingled with other funds and either transferred via international wire transfer to a TD Canada Trust account in the name of GAMAL EL RIMAWI or they were used for personal expenses. For example, on February 23, 2016, a wire in the amount of $73,872.63 was transferred from a Wells Fargo account in the name of L.M. to the Bank of America account number ending 1477. On that same day, wires in the amount of $15,000.00 and $210,220.00 were transferred from the Bank of America account number ending in 1477 to the TD Bank account number ending in 1143. Then on February 24, 2016, $13,000.00 was wired from the TD Bank account number ending in 1143 to a TD Canada Trust account in the name of GAMAL EL RIMAWI. This specific international wire transfer was greater than $10,000.00. The wire transfers to the TD Canada Trust account in the name of GAMAL EL RIMAWI also listed a beneficiary address of 3475 Rue Des Castors, Laval, QC H7P5W7.

## *IDENTIFICATION OF VICTIMS*

12.) Investigators subsequently sought to identify the sources of the large wire transfers made by L.S., N.F. and L.W. and their relationship to Michail MICHAKIS and the Phantom Fine Arts Investments LLC account. L.S. was identified as a 74 year old woman from New Hampshire. Investigators learned that in or about February 2016, L.S. reported to the Federal Bureau of Investigation ("FBI") that she had been the victim of a lottery fraud scheme in which she purportedly won $8 million dollars in the lottery, but was told that she had to pay taxes on the purported winnings prior to receiving the funds. L.S. was initially informed of her purported lottery winnings around May, 2015. L.S. reported to the FBI that she had paid in excess of $1.5 million

dollars in order to obtain her purported winnings. L.S. maintained records of those payments. Those records included records of wire transfers made by L.S. to the Phantom Fine Arts Investments account referenced above. L.S.'s records also reflected large wire transfers made to a Bank of America account in the name of Company X[7] with an account number ending in 4105. Those wires included a $43,600.00 wire made on September 14, 2015, a $180,000.00 wire made on September 23, 2015, and another $128,000.00 wire made on September 29, 2015. To date, L.S. has not received any of her purported lottery winnings.

13.) N.F. was identified as an 82 year old woman from Red Hook, New York. Investigators learned that N.F., in or about March 2016, reported to the New York State Police that she was a victim of a lottery fraud scheme. N.F. reported that she was told by her husband, M.F. that they had won $721,000, which eventually grew to $7.2 million dollars and that he had initially been contacted by telephone in or about September 2013. N.F. was instructed that she had to pay fees on her winnings in order to receive her purported winnings. N.F. subsequently made numerous payments, including a $38,862.43 wire to the Bank of America Phantom Fine Arts Investments LLC account (see paragraph #10). N.F. also made two wires to a TD Bank account number ending in 1143 in the name of RIMAWI. The wires included a wire dated November 10, 2015 in the amount of $34,971.46, and a wire dated November 16, 2015 in the amount of $37,021.16. N.F. also reported that she communicated via email with the individuals who were supposedly arranging for the delivery of her lottery winnings. For example, on November 15, 2015, N.F. received an email from one of the schemers which read in part, "You will also be receiving a lump sum amount of $7,200,000. Thats seven million dollars in total winnings which will be handed to you at the town hall safely and confidential." To date, N.F. has not received any of her purported lottery winnings.

---

[7] The identity of Company X is available to the Court upon request.

14.) L.W. was identified as a 87 year old woman from Dallas, Texas. Investigators learned that in or about October 2016, L.W. had reported to the Dallas County District Attorney's Office that she was the victim of a lottery fraud scheme. L.W. reported to the Dallas County District Attorney's Office that she was initially contacted in or about January 2016 via telephone and told that she had won $875,000.00 in the Publisher's Clearing House sweepstakes. L.W. was informed that she would have to pay taxes and / or fees in order to obtain her winnings. She subsequently made a number of payments in order to obtain those winnings. Those payments included the $273,536.60 cumulative amount wired into the Bank of America Phantom Fine Arts Investments LLC account number ending in 1477 (referenced in paragraph #10) between February 2, 2016 and March 9, 2016. The payments also included a $250,000.00 wire from L.W.'s Fidelity Investments/National Financial Services account to a Bank of America account number ending in 6235 and in the name of Company Y.[8] L.W. also reported that she communicated via email with the individuals who were coordinating the delivery of her purported lottery winnings. For example, on March 7, 2016, L.W. received an email from one of the schemers which read in part, "THE POLICY INSURANCE IS THE RESPONSIBILITY OF THE WINNER. AS PER THE STATE OF TEXAS AND BOTH INSTITUTIONS YOU CHOSE FOR YOUR DEPOSITS. THE INSURANCE IS REFUNDED[GIVEN BACK TO YOU] ONCE YOU HAVE TRANSFERRED YOUR 28 MILLIONS DOLLARS TO YOUR DRH ACCOUNT…" To date, L.W. has not received any lottery winnings.

### *THE FEBRUARY 1, 2016 BORDER SEARCH OF RIMAWI'S SMARTPHONE*

15.) On February 1, 2016, an iPhone 6 Plus belonging to RIMAWI was subjected to inspection when he attempted to cross into the United States through the Massena, New York Border Crossing along the United States, Canadian border in northern New York. RIMAWI, at the time of the crossing, was accompanied by MICHAKIS. RIMAWI's phone was examined

---

[8] The identity of Company Y is available to the Court upon request.

pursuant to Homeland Security Investigations border search authority. Investigators have reviewed the forensic examiner's report, and through that report investigators learned that the phone number associated with the phone detained from RIMAWI was (514) 803-6294. Notably, this is the same number listed on the TD Bank "Customer Account Setup" form for RIMAWI's TD Bank account number ending in 1143 (*see* paragraph 11*).* The forensic examiner's examination also identified numerous photos including: (i) a photo of a Quebec driver's license in the name of RIMAWI and which reflected an address of 3475 rue des Castors, Laval, QC H7P5W7; (ii) a picture of a business card for the UPS Store located at 8 State Rt 37 Suite 6, Hogansburg, NY 13655 which was an address identified by investigators as an address that was used by the perpetrators of the relative in distress scheme discussed earlier; (iii) a picture of a screen which displayed a paragraph about "virtual" kidnappings in Mexico; (iv) a picture of a Bank of America Funds Transfer Request Authorization Form for a wire transfer for a wire transfer from the PHANTOM FINE ARTS INVESTMENTS LLC account number ending in 1464; (v) a picture of Google search results relative to the arrests of C.A., S.F. N.A. and A.A. and (vi) a picture of an invoice for accounting services provided to 6704786 Canada Inc..

16.) The Corporations Canada database shows that 6704786 Canada Inc. is a Canadian corporation and that Gamal El Rimawi, 109 boul Labelle, Rosemere, QC J7A4C1 is the sole director of the corporation. (*See* paragraph 9.)

17.) Based on my training and experience and investigators' review of the bank accounts associated with victim transfers, it is apparent that funds were transferred between accounts and to different accounts in order to conceal the true source of the funds. I also know from my training and experience that perpetrators of financial frauds, in an effort to make it more difficult for law enforcement to recover stolen funds, often move the stolen funds from one account to another and commingle the stolen funds with legitimate funds, etc. I also know that individuals engaged in financial frauds often maintain various financial records (*e.g.,* bank account records, wire receipts, cash deposit slips, etc.) (both in hard copy and electronic format) in order to ensure

that stolen funds are sent to the correct individuals, accounts, and entities; and so as to ensure that members of the fraud conspiracy are receiving their proper "cut" of the frauds being perpetrated.

## REQUEST FOR SEALING

18.) Since the investigation is continuing, disclosure of the arrest warrant, this affidavit, and/or the complaint could jeopardize the progress of the investigation. Accordingly, I request that the Court issue an order that the arrest warrant, affidavit, and the complaint be filed under seal until further order of this Court.

## CONCLUSION

19.) Based upon my experience, training, and the totality of circumstances in the above information, there is probable cause to believe that:

a.) Between about January 1, 2015 and about February 17, 2018, in the Northern District of New York and elsewhere, GAMAL EL RIMAWI and others known and unknown, did knowingly and intentionally combine and conspire to devise and execute a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to cause the interstate transmission of writings, signs, signals, and sounds for the purpose of executing that scheme and artifice, in violation of Title 18, United States Code, Sections 1343 & 1349; and

b.) Between about January 1, 2015 and about February 17, 2018, in the Northern District of New York and elsewhere, GAMAL EL RIMAWI, and others conspired to engage in monetary transactions in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957, by knowingly engaging and attempting to engage in monetary transactions, that is the deposit, withdrawal, and transfer in and affecting interstate and foreign commerce by, through and to one or more financial institutions, in criminally derived property, that

is property constituting and derived from proceeds obtained from a criminal offense, of value greater than $10,000.00 and derived from specified unlawful activity, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Section 1956(h).

WHEREFORE, your affiant seeks the issuance of a criminal complaint (and corresponding arrest warrant) charging GAMAL EL RIMAWI with one count of a violation of Title 18, United States Code, Sections 1343 & 1349 (Conspiracy to Commit Wire Fraud) and one count of a violation of Title 18, United States Code, Section 1956(h) (Conspiracy to Launder Monetary Instruments).

_____
Timothy Irving
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this 17 day of February 2018

_____
Hon. Christian F. Hummel
United States Magistrate Judge